No. 03–7862.

United States Court of Appeals,
Second Circuit.

Argued: March 2, 2004.

Decided: April 2, 2004.

Maisie SHENANDOAH, Elwood Falcon, Diane Shenandoah, Adah Shenandoah, Minor Child by and through her Mother Diane Shenandoah, Pete Shenandoah, Minor Child by and through his Mother Diane Shenandoah, Cameron Shenandoah, Minor Child by and through his Mother Diane Shenandoah, Danielle Patterson, Clairese Patterson, Minor Child by and through her Mother Danielle Patterson, Jolene Patterson, Minor Child by and through her Mother Danielle Patterson, Preston Patterson, Minor Child by and through his Mother Danielle Patterson, Victoria Shcenandoah–Halsey, Matthew Jones, Wesley Halsey, Minor Child by and through his Mother Victoria Schenandoa–Halsey, Vincent Halsey, Minor Child by and through his Mother Victoria Shenandoah–Halsey, Monica Antone–Watson, Martina Watson, Minor Child by and through her Mother Monica Antone–Watson, Kyle Watson, Minor Child by and through his Mother Monica Antone–Watson, Lawrence Thomas and Arnold Thomas, Petitioners–Appellants,

v.

Arthur Raymond HALBRITTER, Peter Carmen, Marilyn John, Dick Lynch, Paul Rinko, Stewart F. Hancock, Richard D. Simons, Arthur Pierce, Gary K. Gordon, "John Does", being all members of the Men's Council, "Jane Does", being all members of the Clan Mothers, Jeff Jost, Jack McQueenie, Dan Caputo; Kevin Storm; Chris Manwaring; Gene Rifenburg; Larry Kutz; Officer Urtz; Frank Siminelli; Lori Billy; Corky Ryan; Kevin O'Neil; Bill Pendock; and Oneida Housing Corporation, Respondents–Appellees.

Donald R. Daines, Esq., Hill Wallack, Princeton, NJ, for Petitioners–Appellants.

Michael R. Smith, Esq., Zuckerman Spaeder LLP, Washington, DC, Mackenzie Hughes, L.L.P., David M. Garber, Esq., Syracuse, NY, Zuckerman Spaeder, L.L.P., Elizabeth Taylor, Esq. (Argued), William W. Taylor, Esq., Michael R. Smith, Esq., David A. Reiser, Esq., Washington, D.C., for Respondents–Appellees.

Before: VAN GRAAFEILAND, LEVAL, and CALABRESI, Circuit Judges.

VAN GRAAFEILAND, Senior Circuit Judge.

Petitioners appeal from the dismissal by the District Court for the Northern District of New York (Mordue, J.) of their habeas corpus petitions seeking relief against Arthur Raymond Halbritter, *et al.* under the Indian Civil Rights Act (ICRA), 25 U.S.C. § 1301 *et seq.* Petitioners seek the only remedy available under the Act, a writ of habeas corpus, in an effort to prevent Respondents from enforcing an allegedly unlawful housing ordinance of the Oneida Indian Nation of New York. The District Court held that it did not have jurisdiction over this litigation. For the reasons that follow, we affirm.

Although there was an "ongoing intra-Oneida political dispute" as to whether Halbritter or Wilbur Homer was the Nation Representative of the Oneida Nation, *Homer v. Halbritter,* 158 F.R.D. 236, 237 (N.D.N.Y.1994), the Federal Government recognized Halbritter as the official representative of the Nation. *Shenandoah v. U.S. Dep't. of Interior,* 159 F.3d 708, 710 (2d Cir.1998). Petitioners assert, however, that Halbritter is using his power obtained through illegitimate means to suppress, harass, and intimidate various members of the Nation considered by Halbritter to be dissidents. Petitioners' first claim is that Halbritter, along with other named Re-

spondents, enacted an illegal housing ordinance permitting the seizure and destruction of their homes without providing just compensation. Petitioners claim further that the housing ordinance is a bill of attainder which was enacted with the specific intent to punish them for exercising various protected rights.

The ordinance at issue, No. 00–23, requires the Oneida Nation's Commissioner of Public Safety to: (1) inspect all homes located on Territory Road, a portion of Oneida Nation lands known as the "32 acres," to ascertain compliance with the standards set forth in the National Building Code; (2) require rehabilitation of homes not in compliance if rehabilitation is possible; and (3) remove and/or demolish structures which cannot be repaired or rehabilitated.

The housing ordinance was upheld in September 2001 by Chief Judge Stewart F. Hancock Jr., of the Oneida Indian Nation Trial Court as valid under the ICRA and as a reasonable exercise of self-government. Judge Hancock's decision was affirmed by the Oneida Indian Nation Appellate Court in January 2002. Petitioners, who argued that the housing ordinance was an attempt to harass and intimidate them, resisted its implementation.

Petitioners' appeal focuses on the case of Danielle Patterson, who resided in a trailer on the "32 acres" with her three minor children. In November 2001, Ms. Patterson was arrested and then released after she resisted compliance with an inspection of her home.

Approximately a year later, on October 18, 2002, Patterson was arrested again and incarcerated for her failure to appear in court on criminal charges stemming from her 2001 altercation with tribal officers. She pled guilty to one count of criminal contempt for her failure to appear in court.

Judge Richard Simons sentenced her to "time served" and released her immediately from custody. On October 23, 2002, Patterson's home was demolished.

Petitioners sought habeas relief under the ICRA, claiming that the Nation's enforcement of the housing ordinance violated numerous provisions of the Act. Respondents moved to dismiss the complaint for lack of subject matter jurisdiction and Petitioners cross-moved for preliminary injunctive relief. The District Court held that it was without power, based on a lack of subject matter jurisdiction, to hear the case under the ICRA. Additionally, the District Court held that the housing ordinance did not operate as an unlawful bill of attainder. Therefore, the District Court dismissed Petitioners' Complaint. For the reasons that follow, we affirm.

 A party seeking to invoke the subject matter jurisdiction of a Court has the burden of demonstrating that there is subject matter jurisdiction in the case. *Scelsa v. City Univ. of New York,* 76 F.3d 37, 40 (2d Cir.1996). "Although Title I of ICRA lists a number of substantive rights afforded individuals that serve to restrict the power of tribal governments, Title I does not establish or imply a federal civil cause of action to remedy violations of § 1302." *Shenandoah,* 159 F.3d at 713 (citation omitted).

 "Title I of the ICRA identifies explicitly only one federal court procedure for enforcement of the substantive guarantees of § 1302" *viz.* § 1303. *Id.* This section "makes available to any person '[t]he privilege of the writ of habeas corpus..., in a court of the United States, to test the legality of his detention by order of an Indian Tribe.'" *Id.* (quoting *Poodry v. Tonawanda Band of Seneca Indians,* 85 F.3d 874, 882 (2d Cir.1996)). "Section 1303 was intended by Congress to have no

broader reach than the cognate statutory provisions governing collateral review of state and federal action," *id.* at 714 (quoting *Poodry*, 85 F.3d at 901 (Jacobs, J., dissenting)) and Petitioners "must allege that respondents pose a 'severe actual or potential restraint on [petitioners'] liberty.'" *Id.* (quoting *Poodry*, 85 F.3d at 880).

Respondents claim that because Petitioners have failed to allege or submit evidence that they are or were in actual custody at the time the lawsuit was commenced, this Court lacks subject matter jurisdiction. Although that might be true when custody is the issue, Petitioners point out that the habeas relief they seek addresses more than just actual physical custody; it includes parole, probation, release on one's own recognizance pending sentencing at trial, and in the case of tribal affairs, banishment.

■ The question then becomes whether the actions taken against the Petitioners have resulted in the legal equivalent of a banishment, or otherwise qualify as a "severe actual or potential restraint on [their] liberty," which might provide habeas jurisdiction. *Poodry*, 85 F.3d at 880. We determine the majority in *Poodry*, in interpreting the court's jurisdiction to encompass banishment, was concerned about the unique severity of that punishment. *Id.* at 896.[1] In the instant case, Respondents' enforcement of their housing ordinance did not constitute a sufficiently severe restraint on liberty to invoke this Court's habeas corpus jurisdiction.

■ The gravamen of Petitioners' Complaint focuses on the destruction of their homes, which can be described more aptly as an economic restraint, rather than a restraint on liberty. As a general rule, federal habeas jurisdiction does not operate to remedy economic restraints. The imprisonment of Ms. Patterson for her alleged physical assault on Nation officers is too tenuously connected to the housing ordinance to provide habeas jurisdiction for an attempt to prevent the enforcement of that ordinance.

Because the only mechanism for federal enforcement of rights under ICRA is a federal habeas petition, and no detention has been established, the District Court properly dismissed Petitioners' claim for lack of subject matter jurisdiction. Even though the actions of the ruling members of the Nation may be partly inexcusable herein, we can only remedy those wrongs which invoke the jurisdiction of this Court. Unfortunately for Petitioners, Constitutional provisions limiting federal or state authority do not, *per se*, control the actions of the tribal governments complained of herein. *Poodry*, 85 F.3d at 881 n. 7.

■ Petitioners fare no better by attempting to demonstrate that the housing ordinance is a bill of attainder. A bill of attainder is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without...the protections of a judicial trial." *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 468, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977). Petitioners claim that the housing ordinance is designed to remove them from the Nation as punishment for their constant dissent. However, the terms of the Ordinance apply to all residents of the territory at issue, and cannot be said to single out any individuals. Petitioners have not shown that the housing ordinance is a bill of attainder.

---

1. In *Poodry*, the majority recognized the logical inconsistency that would flow from being unable to remedy a permanent banishment from the tribe: "We believe that Congress could not have intended to permit a tribe to circumvent the ICRA's habeas provision by permanently banishing, rather than imprisoning, members 'convicted' of the offense of treason." *Poodry*, 85 F.3d at 895.

In holding as we do, we are not unmindful of the following warning of Alexander Hamilton quoted in *United States v. Brown,* 381 U.S. 437, 444, 85 S.Ct. 1707, 14 L.Ed.2d 484:

"If [a] legislature can disfranchise any number of citizens at pleasure by general descriptions, it may soon confine all the votes to a small number of partisans, and establish an aristocracy or an oligarchy; if it may banish at discretion all those whom particular circumstances render obnoxious, without hearing or trial, no man can be safe, nor know when he may be the innocent victim of a prevailing faction. The name of liberty applied to such a government, would be a mockery of common sense."

If this danger exists in cases such as the instant one, and the presence of twenty or thirty Indian women engaged in prayer in the courtroom and adjoining hallway when this appeal was argued is some indication of its possible existence, Congress should consider giving this Court power to act.

The judgment of the District Court is hereby AFFIRMED.